## A93A0450. REA v. SYSTRONICS, INC.
### (433 SE2d 590)

POPE, Chief Judge.

Plaintiff James C. Rea filed suit against his former employer Systronics, Inc. for breach of his employment contract claiming he was terminated without cause pursuant to the terms of his employment contract and is entitled to certain additional compensation pursuant to Section 8 (i) of that contract. Plaintiff further alleges defendant has failed to pay him certain commissions allegedly due him. Defendant filed a motion for partial summary judgment seeking judgment as a matter of law on plaintiff's claim for monies allegedly due him pursuant to Section 8 (i) of plaintiff's employment contract. The trial court granted defendant's motion for partial summary judgment. We reverse.

1. Commencing on January 1, 1989, plaintiff was hired by defendant as its Vice President of Sales and Marketing for a term of six years, unless his employment was terminated earlier as provided in Section 8 of his employment contract. He was terminated on January 2, 1992.

Two subsections of Section 8 of the contract are pertinent to this appeal. Subsection (c) provides: "Employer may terminate Employee's employment after January 1, 1992 if the accumulated sales (excluding acquired gross sales) for Employer for the years 1989, 1990 and 1991 are less than $4,560,000.00[.]" Subsection (i) allows the defendant to terminate plaintiff without cause if defendant makes certain semi-monthly payments to plaintiff until December 31, 1994.

Although the trial court's order granting defendant's motion for partial summary judgment does not state the grounds on which that motion was granted, it appears the trial court found the plaintiff was terminated for cause pursuant to Section 8 (c) of his employment contract and therefore plaintiff was not entitled to additional compensation pursuant to Section (i) of the contract. Plaintiff contends because accumulated sales for 1989, 1990 and 1991 exceeded $4,560,000, his termination on January 2, 1992 was without cause and to the extent the trial court's grant of partial summary judgment in defendant's favor was based on a finding that plaintiff was terminated for cause in accordance with Section 8 (c) the grant is erroneous.

Plaintiff first argues that the term "acquired gross sales" is ambiguous as it is used in Section 8 and defendant's grant of partial summary judgment must be reversed on that basis. We do not agree. "Acquired gross sales" is defined in Section 6 (a) of the contract. That

section provides in pertinent part: "It is anticipated that through stock acquisitions or asset acquisitions Employer intends from time to time to acquire products, technology, patents, accounts, and other revenue producing products from other entities. Employer is negotiating with Albany International Corp. to acquire a portion of this company's product line. With respect to gross sales of Employer which are derived from or related to the acquisition of another company's business, including but not limited to, Albany International Corp.'s Webb Inspection Systems ['Webspec'], it is agreed that Employee's commissions as to said gross sales (hereinafter called 'acquired gross sales'[)] shall be calculated by the following formula:

| Calendar Year: | Commission Formula |
| --- | --- |
| 1990 | .004 times the acquired company's previous year's gross sales volume (for product line(s) acquired) plus 4.5% times the increase in said acquired gross sales for present year over the acquired gross sales for the previous calendar year. . . ." |

Plaintiff contends that "acquired gross sales" as that term is defined in Section 6 (a) and used in Section 8 (c) means only the base volume of sales acquired with the company, that is, the sales of the acquired company for the year prior to acquisition. As the language quoted above illustrates, however, there are *two aspects* to "acquired gross sales": (1) the acquired company's gross sales volume for the year preceding its acquisition, as plaintiff contends; *and* (2) the increase in sales of the acquired company or product over the gross sales volume for the company acquired for the year preceding its acquisition. Thus, when determining whether plaintiff was terminated for cause pursuant to Section 8 (c) of the contract, the trial court did not err in deducting all sales of products for the acquired companies.

Plaintiff also argues that because he was compensated for any increase in sales of products of the acquired companies over the gross sales volume for the year preceding the company's acquisition at the same rate as he was compensated for sales of other products sold by defendant, the increase in sales should not be considered part of "acquired gross sales." This argument is without merit. Under the terms of the contract, plaintiff was compensated at the same rate for any increase in acquired gross sales and for sales of products other than those of acquired companies. Accordingly, the amount of compensation received by plaintiff for the sales is not determinative of whether any increase in sales of products of acquired companies were part of "acquired gross sales" as defined by the contract.

2. Our holding that "acquired gross sales" includes all sales of products for the acquired companies does not end our analysis of

whether defendant was terminated for cause pursuant to Section 8 (c) of the contract. In opposition to defendant's motion for partial summary judgment, plaintiff submitted his affidavit in which he avers that he was prevented from meeting the sales minimum set forth in Section 8 (c) of the contract because defendant's president, John Roberts, "took away [his] authority to manage and supervise the Defendant's sales force and sales program and assigned [plaintiff] to duties which restricted [his] ability to see that the sales minimums were reached. As a result of Roberts' conduct, the Defendant's sales, which had been sharply rising under [plaintiff's] management, flattened out. In approximately February, 1991, Roberts told [plaintiff] that he was a better sales manager than Roberts and returned control of sales back over to [plaintiff]. However, in June, 1991, control of sales was again taken from [plaintiff] and given to Roberts. At that time, [plaintiff] was primarily given as customers only companies who had need of [an acquired company's] products and one other company who had previously been a customer. The better customers, or potential customers, were given to a salesman with less demonstrated ability than [plaintiff]. . . . As a result of the Defendant taking control of sales from [plaintiff] for these two periods of time, contrary to the intent of the parties' Agreement, it became impossible for [plaintiff] to increase sales to a point where his sales minimums, as established in Section Eight of the Agreement, could be reached without [acquired company product] sales."

It is well settled that " 'where a party prevents the performance of a stipulation of a contract undertaken by the other party, he is estopped from setting up in his own behalf any injury which may have resulted from the nonperformance of such condition.' . . . [Cit.]" *Kent v. Hunt & Assoc.*, 165 Ga. App. 169, 171 (5) (299 SE2d 123) (1983).

Defendant did not present evidence to refute plaintiff's allegation that Roberts relieved him of his duties of sales manager. Defendant argues, however, that Roberts' actions were authorized by Section 3 (a) of the contract. That section provides in pertinent part: "Subject to the general supervision and pursuant to the orders, advice and direction of [Roberts] the [plaintiff] agrees to assist Employer in the following: (1) achieving sales objectives. . . ." The term "general supervision" is not defined in the contract. We hold plaintiff's affidavit was sufficient to create issues of material fact concerning whether Roberts' action of relieving him of his duties as sales manager constituted general supervision of plaintiff by Roberts and whether Roberts' actions prevented plaintiff from achieving the sales minimum set forth in Section 8 of the contract. Accordingly, the trial court erred in granting defendant's motion for partial summary judgment.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MAY 10, 1993 —
RECONSIDERATION DENIED JULY 14, 1993.

*Walls & Corlew, Harold D. Corlew*, for appellant.
*Harris, Phillips & Harris, R. Britt Harris, Jr., Steven D. Harris*, for appellee.